**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **CATHY M. BRENTZEL and THE ESTATE OF ROBERT C. HACKER**<br>    **Plaintiffs,**<br><br>          v.<br><br>**AIG PROPERTY CASUALTY COMPANY**<br>    **Defendant.** | )<br>)<br>)<br>)<br>)   Civil Action No. 1:20-cv-1055<br>)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiffs Cathy M. Brentzel and the Estate of Robert C. Hacker, her late husband, have brought this two-count diversity action against their insurer, Defendant AIG Property Casualty Company, to recover $1.2 million in personal property—jewelry, clothing, artwork, etc.—that was allegedly stolen or lost by Fairfax Transfer & Storage, Inc., a moving company hired by Brentzel to move personal property from a Virginia residence to a Washington D.C. residence between June 2015 and January 2016. Count 1 of the Complaint asserts a Virginia state law claim against defendant for breach of an insurance contract. Count 2 of the Complaint asserts a Virginia state law claim against defendant for bad faith denial of an insurance claim.

At issue now is defendant's Motion for Summary Judgment, which seeks dismissal of this action in its entirety. Specifically, defendant argues

> (1) that Count 1, a Virginia state law claim for breach of an insurance contract, must be dismissed as untimely because plaintiffs brought this action on September 9, 2020, more than 4.5 years after plaintiffs' loss event on January 31, 2016 and thus well after the 2-year limitations period in plaintiffs' insurance policy; and
>
> (2) that Count 2, a Virginia state law claim for bad faith denial of an insurance claim must be dismissed because Virginia does not recognize this claim as an independent cause of action.

The matter has been fully briefed and argued, including oral argument on the matter that

occurred on April 2, 2021.  Accordingly, the matter is now ripe for disposition.

**I.**

The following undisputed facts are derived from the record in this case.[1]

### A. The Parties and The Policies

- Plaintiffs are Cathy M. Brentzel and the Estate of Robert C. Hacker, her late husband ("Plaintiffs").  Hacker died in November 2018 and Brentzel is the legal representative of Hacker's estate.

- Defendant is a subsidiary of the insurance conglomerate AIG.[2]

- Brentzel and Hacker rented a home in Middleburg, Virginia (the "Virginia Residence") and owned a home on 28th Street N.W. in the District of Columbia (the "D.C. Residence").

- Brentzel and Hacker are the named insureds on two homeowners insurance policies with defendant for the Virginia Residence and the D.C. Residence.  Specifically,

  - Brentzel is the named insured on a homeowners' insurance policy with defendant for the Virginia Residence, Policy No. PCG 32173198 ("Virginia Policy"), Def. Exs. 1–2, at 1–56 (Dkt. 23-1); and

  - Brentzel and Hacker are the named insureds on a homeowners' insurance policy with defendant for the D.C. Residence, No. PCG 3953824 ("D.C. Policy"), Def. Exs. 3–4, at 57–88 (Dkt. 23-1).[3]

---

[1] Defendant complied with Local Rule 56(B) by including in its summary judgment briefing a Specifically Captioned Statement of Undisputed Material Facts, supported by appropriate citations to admissible record evidence.  *See* Def. Br. at 2–5 (Dkt. 22).  Plaintiffs, however, did not comply with Local Rule 56(B).  In this respect, plaintiffs attempted to dispute certain facts in defendant's statement of undisputed facts without appropriate citations to admissible record evidence.  *See* Pls. Br. at 8 (Dkt. 33).  Specifically, the section of plaintiffs' brief that purports to refute certain of defendant's asserted undisputed facts cites only two documents, namely (i) defendant's memorandum of law (Dkt. 22) and (ii) plaintiffs' state court complaint and the nonsuit order for that state court action (Dkt. 33-20).  These citations do not refute any facts asserted in defendant's statement of undisputed material facts.  Thus, as Local Rule 56(B) provides, the facts asserted in defendant's statement of undisputed material facts are taken as true on summary judgment.

[2] The parties correctly do not dispute the existence of diversity jurisdiction here.  Brentzel is a citizen of Virginia in her personal capacity and a citizen of the District of Columbia in her capacity as the legal representative of Hacker's estate, as Hacker was a D.C. citizen at the time of his death in November 2018.  *See* 28 U.S.C. § 1332(c)(2); *see also Janeau v. Pitman Mfg. Co., Inc.*, 998 F.2d 1009 (Table), 1993 WL 280354, *2 n.* (4th Cir. 1993) (same).  Defendant is as citizen of Pennsylvania and New York.

[3] The Virginia and D.C. Policies are renewable single year policies that begin each year in July.  Here, because the insured losses allegedly occurred between June 2015 and January 2016, the Virginia Policy consists of a July 2014–July 2015 policy term (Def. Ex. 1) and the renewed July 2015–July 2016 policy term (Def. Ex. 2), and the D.C. Policy consists of a July 2014–July 2015 policy term (Def. Ex. 3) and the renewed July 2015–July 2016 policy term (Def.

- Both the Virginia Policy and the D.C. Policy contain contractual limitations periods on when an insured may file a civil action to contest insurance coverage. Specifically,

   o The Virginia Policy states that: "You agree to bring any action against us within two (2) years after a loss occurs, but not until thirty (30) days after proof of loss has been filed and the amount of the loss has been determined"; and

   o The D.C. Policy states that: "You also agree to bring any action against us within one year after a loss occurs, but not until thirty (30) days after proof of loss has been filed and the amount of loss has been determined."[4]

- The parties agree that the Virginia Policy and the D.C. Policy differ only in that the Virginia Policy has a 2-year limitations period whereas the D.C. Policy has a 1-year limitations period.

- As between the Virginia Policy and the D.C. Policy, the Virginia Policy governs disposition of plaintiffs' claims here, as this action chiefly concerns homeowners' insurance coverage for items last seen in the Virginia Residence and that allegedly never entered the D.C. Residence.[5]

- Brentzel retained counsel in November 2016 to assist her in pursuing her insurance claim. Brentzel was represented by counsel until April 5, 2019. On that day, counsel withdrew, apparently owing to a fee dispute. In January 2020, Brentzel retained new counsel, who continues to represent plaintiffs to this day. *See* Compl. ¶¶ 41, 55 (Dkt. 1)

### B. The Move

- In June 2015, Brentzel contracted with Fairfax Transfer & Storage, Inc., ("Fairfax Transfer"), a Virginia moving company, to transport personal household items from the Virginia Residence to the D.C. Residence (the "Move").

- The Complaint alleges that Brentzel was traveling out of town in June 2015 and that Brentzel therefore left supervision of the Move to her household staff at the Virginia

---

Ex. 4).

[4] Virginia Policy, Def. Exs. 1–2, at 14, 24, 42, 52 (Dkt. 23-1); D.C. Policy, Def. Ex. 3–4, at 70, 87 (Dkt. 23-1).

[5] The Virginia Policy is the correct policy to apply for three additional reasons. First, the record indicates that Brentzel filed her insurance claim pursuant to the Virginia Policy. *See* Pls. Ex. 11 at 1 (Dkt. 33-11) (indicating in the caption that Brentzel filed her claim under PCG 32173198, the Virginia Policy). Second, application of the Virginia Policy is not inconsistent with the parties' expectations, given that plaintiffs brought this action in Virginia and argue that "D.C. Law Does Not Apply to Any Limitations Issue in this Case." Pls. Br. at 18 (Dkt. 33). Third, the outcome is no different under the D.C. Policy, as the sole pertinent difference between the policies is that the D.C. Policy has a shorter, 1-year limitations period. Thus, as concluded *infra*, because this action is untimely under the Virginia Policy, this action is necessarily also untimely under the D.C. Policy.

Residence. *See id.* ¶¶ 25–26.

- The Complaint alleges that, in late June or early July 2015, Brentzel returned to the D.C. area from her out of town travel. Upon her return, Brentzel allegedly learned:

    - (1) that the Move was still ongoing; and

    - (2) that although Fairfax Transfer had delivered some items to the D.C. Residence, many of those items were delivered in a damaged condition or left in disarray.[6]

- On July 24, 2015, Brentzel filed a claim with defendant for damaged property.

- On or about September 23, 2015, a Fairfax Transfer employee stole cash and a diamond ring from the D.C. Residence.[7]

- The Complaint alleges that the Move ended no later than January 31, 2016, as the "last delivery" of the personal household items occurred "in or about January 2016."[8]

- The Complaint alleges that Brentzel determined the "full extent of the insured losses . . . in or about January 2016." *Id.*

- The record indicates that in August or September 2016, Brentzel informed defendant that her damaged property claim was now a claim for stolen or lost property worth approximately $1.6 million. *See* Pls. Ex. 8 at 2 (Dkt. 33-8).

### C. Civil Actions

- Plaintiffs have filed three civil actions against defendant and one civil action against Fairfax Transfer.

    - <u>First State Court Action</u>

---

[6] The Complaint also alleges that Fairfax Transfer delivered items to a storage facility and/or a different D.C. residence that Brentzel and Hacker owned. *See* Compl. ¶¶ 25–26.

[7] This Fairfax Transfer employee, Thomas Dougalewicz, pled guilty to one count of second-degree theft in D.C. Superior Court. *See United States v. Dougalewicz*, No. 2015 CF2 014456 (D.C. Sup. Ct. 2015). Plaintiffs contend that Dougalewicz stole $10,000 in cash. Defendant at one point argued that Dougalewicz stole only $1,500 in cash. *See* Pls. Ex. 10 at 2 (Dkt. 33-11).

[8] *See* Compl. ¶ 27 (Dkt. 1) ("Additional deliveries were made on a piecemeal basis, extending from July 21, 2015 to the end of that year. Only after the last delivery was made could a complete inventory be compiled, and so the full extent of the insured losses could not be determined until in or about January 2016."); *see also* Compl. ¶¶ 34–35 (explaining that "insured occurrences" had taken place by "in or about January 2016"); Def. Br. at 3 ("2. Plaintiffs' proof of loss asserts that the cause of their loss was 'theft' and that the loss 'occurred between July 2015 and January 2016.'"); Pls. Br. at 8 (Dkt. 33) ("Paragraph 2 is unduly tendentious in its use of quotation marks but essentially is accurate in fixing the date of the loss.").

- - ▪ On December 29, 2016, Brentzel and Hacker filed a Virginia state court action against defendant, alleging in a 2-page complaint that defendant failed to "accept[] coverage" for missing personal items worth "in excess of Four Million Dollars." Compl. ¶¶ 11, 13 (Dkt. 33-17), *Robert Hacker & Cathy Brentzel v. AIG Property Casualty Company*, No. CL00105882 (Loudoun Cty. Cir. Ct. 2016).

    - ▪ On November 17, 2017, the Loudoun County Circuit Court granted Brentzel and Hacker's motion to nonsuit the action and the matter was dismissed. Brentzel and Hacker never served the Complaint in this first state court action and now describe this action as a protective lawsuit designed to toll the limitations period.[9]

  - o Second State Court Action

    - ▪ On May 10, 2018, not more than six months after the November 17, 2017 nonsuit order, Brentzel and Hacker filed a second state court action against defendant, alleging in a 2-page complaint that defendant failed to "accept[] coverage" for missing personal items worth "in excess of Four Million Dollars." Compl. ¶¶ 11, 13 (Dkt. 33-20), *Robert Hacker & Cathy Brentzel v. AIG Property Casualty Company*, No. CL115179 (Loudoun Cty. Cir. Ct. 2018).

    - ▪ On August 22, 2019 and September 13, 2019, defendant issued formal denials of Brentzel's insurance claim. *See* Def. Ex. 15, at 69 (Dkt. 23-2); *see also* Pls. Ex. 16 (Dkt. 33-16).

    - ▪ On February 7, 2020, the Loudoun County Circuit Court granted Brentzel and Hacker's motion to nonsuit the action and the matter was dismissed. Brentzel and Hacker never served the Complaint in this second state court action and now describe this action as a protective lawsuit designed to toll the limitations period.

- This Federal Action Against Defendant

  - ▪ On September 9, 2020, more than six months after the February 7, 2020 nonsuit order, plaintiffs filed the instant civil action against defendant, alleging a Virginia state law claim for breach of an insurance contract ("Count 1") and a Virginia state law claim for bad faith denial of an insurance claim ("Count 2").

  - ▪ This action filed on September 9, 2020 is the subject of defendant's instant motion for summary judgment.

- Separate Federal Action Against Fairfax Transfer, the Mover

---

[9] On November 21, 2017, four days later, Brentzel filed with defendant a Sworn Statement in Proof of Loss. *See* Pls. Ex. 13 (Dkt. 33-13).

- On September 14, 2020, plaintiffs filed a parallel action against Fairfax Transfer, *Brentzel et al. v. Fairfax Transfer & Storage*, No. 1:20-cv-1076 (E.D. Va. 2020), alleging that, in connection with Brentzel and Hacker's move, Fairfax Transfer either lost, stole, or damaged $1.9 million dollars' worth of household items belonging to Brentzel and Hacker.

- On December 10, 2020, plaintiffs' parallel action against Fairfax Transfer was dismissed, chiefly for untimeliness.[10] Plaintiffs have appealed the dismissal of this action to the Fourth Circuit Court of Appeals.[11]

## II.

The question presented on summary judgment is whether this action, filed September 9, 2020, is timely in light of the Virginia Policy's 2-year limitations period. The Virginia Policy's 2-year limitations period states:

> You agree to bring any action against us within two (2) years after a loss occurs, but not until thirty (30) days after proof of loss has been filed and the amount of the loss has been determined.[12]

The threshold timeliness analysis under the Virginia Policy is straightforward. The first step in the analysis is to determine the date that plaintiffs' "loss occur[ed]," as the Virginia Policy's 2-year clock begins to run on this date. *Id.* Here, no party disputes that plaintiffs' "loss occur[ed]"[13]

---

[10] This parallel action against Fairfax Transfer, alleging (i) a claim under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 and (ii) two state law conversion claims, one under Virginia law and one under D.C. law, was dismissed as untimely with respect to the Carmack Amendment claim, as the Complaint and its incorporated exhibits in effect conceded the issue of timeliness. *See* Dec. 10, 2020 Order at 4, *Brentzel et al. v. Fairfax Transfer & Storage*, No. 1:20-cv-1076 (E.D. Va. 2020) (Dkt. 17) (citing *5K Logistics, Inc. v. Daily Exp., Inc.*, 659 F.3d 331, 336 (4th Cir. 2011)). The first state law claim was preempted by federal law, *see* Dec. 10, 2020 Order at 6 (citing *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 705 (4th Cir. 1993)), and supplemental jurisdiction was discretionarily declined over the second state law claim, *see* Dec. 10, 2020 Order at 7.

[11] Following the completion of summary judgment briefing and oral argument in the instant action, plaintiffs filed a supplemental docket submission (Dkt. 44) containing a deposition of a Fairfax Transfer employee apparently taken pursuant to the Fourth Circuit's mediation program in *Brentzel et al. v. Fairfax Transfer & Storage*, No. 21-1025 (4th Cir. 2021). This supplemental docket submission, filed without leave, plainly violates Judge Nachmanoff's March 1, 2021 Order precluding plaintiffs from using this deposition in connection with summary judgment here. *See* March 1, 2021 Order (Dkt. 31); *see also* Feb. 26, 2021 Tr. 7:7-22 (Dkt. 37) (transcript of oral argument before Judge Nachmanoff). Nothing about this submission (Dkt. 44) alters the result reached here on summary judgment.

[12] Virginia Policy, Def. Exs. 1–2, at 14, 24, 42, 52.

[13] *Id.*

on January 31, 2016, as by that date the Move had been completed and Brentzel and Hacker had determined the full extent of their insurance losses. *See* Def. Br. at 3 (statement of undisputed facts); *see also* Pls. Br. at 8 (conceding that defendant "essentially is accurate in fixing the dates of the loss"). Indeed, not only is this fact undisputed on summary judgment, but the Complaint pled that plaintiffs determined the "full extent of the insured losses" in or around January 2016. Compl. ¶ 27.

The second step in the analysis is to determine whether plaintiffs' filing of this action on September 9, 2020 was within 2 years of plaintiffs' loss event on January 31, 2016. Clearly, it was not. The Supreme Court of Virginia has routinely dismissed as untimely insurance coverage actions brought after the pertinent limitations period has expired,[14] and here, because plaintiffs did not bring this action within the Virginia Policy's 2-year limitations period, this action must be dismissed as untimely.

To be sure, the Virginia Policy goes on to state that an insured may not file a civil action "until thirty (30) days after proof of loss has been filed and the amount of the loss has been determined." Virginia Policy, Def. Exs. 1–2, at 14, 24, 42, 52. This proof of loss clause, separated by a comma from the clause setting the 2-year limitations period, does not operate to extend the starting point for the Virginia Policy's 2-year clock to file a civil action; the starting point remains the date the "loss occurs," here January 31, 2016. *Id.* Nor could it be argued that this proof of loss clause operates to extend the starting point for the timeliness analysis. As the Ninth Circuit persuasively explained in a similar insurance coverage case dismissed for untimeliness, this essentially identical proof of loss clause is a *condition precedent* to filing a civil action, not an extension of the limitations period. *See Keller v. Fed. Ins. Co.*, 765 F. App'x 271, 272 (9th Cir.

---

[14] *See, e.g.*, *Allstate Prop. v. Ploutis*, 290 Va. 226, 234 (2015) (insurance action not filed within 2-year limitations period dismissed as untimely); *see also Hitt Contracting, Inc. v. Indus. Risk Insurers*, 258 Va. 40, 47 (1999) (same).

2019) (interpreting a nearly verbatim provision as establishing a "condition[] precedent" to filing suit, as distinct from a separate "one-year suit-limitation that begins 'after a loss occurs' "). Thus, nothing about this condition precedent means that the Virginia Policy's 2-year limitations period runs from the date of proof of the loss (here, November 21, 2017) or the formal denial of the claim (here, September 13, 2019).[15] The Virginia Policy's 2-year limitations period means what it says—a plaintiff has "two (2) years after a loss occurs" to file a civil action—and here the instant federal action filed September 9, 2020 is simply not within this 2-year period. Virginia Policy, Def. Exs. 1–2, at 14, 24, 42, 52.

Also instructive in this regard is the Supreme Court of Virginia's opinion in *Ramsey v. Home Ins. Co.*, 203 Va. 502 (1962), another insurance case that reached a similar conclusion in dismissing the action for untimeliness. In *Ramsey*, the pertinent insurance policy provisions stated (1) that "[n]o suit or action . . . shall be sustainable . . . unless commenced within twelve months next after inception of the loss" and (2) that "the amount of the loss for which the insurer is liable shall be payable sixty days after proof of loss is received and ascertainment of the loss is made." *Id.* at 503. In construing both provisions, the Supreme Court of Virginia concluded that the first provision—*i.e.*, a civil action must be filed within twelve months of the loss—set the limitations period, and the Court rejected any argument to delay running the limitations period from after "proof of loss w[as] received and ascertainment of the loss w[as] made." *Id*. at 503, 505–06. In other words, the starting point for the timeliness analysis was the date of the loss, not the date for submission of proof of loss, payment of the loss, or some other event. Accordingly, as *Keller* and *Ramsey* confirm, the starting point for the timelines analysis here is plaintiffs' January 31, 2016

---

[15] *See Keller*, 765 F. App'x at 272 ("Kelley and Yaney's interpretation of the clause—that . . . the suit-limitation period is triggered only after a claim is filed and Federal makes its final determination—is inconsistent with the clear language that the suit-limitation period begins 'after a loss occurs.' ").

loss event.

In summary, the starting point for the timeliness analysis is the date of the loss, here January 31, 2016. Therefore, the deadline to file the instant civil action would be January 31, 2018, two years later. Accordingly, unless the Virginia Policy's 2-year limitations period is tolled, this action must be dismissed for untimeliness.

Analysis of statutory tolling[16] properly begins with recognition of the familiar rule under Va. Code § 8.01-229, Virginia's tolling statute, that the filing of a state court action tolls the limitations period for the duration that the action is pending. *See* Va. Code § 8.01-229(E)(1); *see also Simon v. Forer*, 265 Va. 483, 488 (2003) ("[A] statute of limitations is tolled when an action [is] commenced within the prescribed limitation period.").[17] Importantly, however, this ordinary rule does not apply where, as here, the state court action to be tolled is later *nonsuited*. Instead, there is a carefully delineated rule for nonsuited actions, appearing in § 8.01-229(E)(3) (the "Nonsuit Rule"). The Nonsuit Rule details whether or not time may be tolled in the event the state court action is nonsuited. *See* Va. Code § 8.01-229(E)(3); *Forer*, 265 Va. at 488–89 (discussing Va. Code § 8.01-229(E)(3)). Specifically, under the Nonsuit Rule, the time period a nonsuited action was pending may be tolled (and thus excluded from any timeliness calculation) if and only if, subsequent to the nonsuit order ending the action, the plaintiff refiles the action:

> (1) within "six months from the date of the [nonsuit] order";
>
> (2) within the "original period of limitation"; or
>
> (3) within "the period provided in subsection (B)(1)," applicable

---

[16] At the outset, it is worth noting that plaintiffs do not seek statutory tolling, arguing instead that statutory tolling is "extraneous to the case." Pls. Br. at 13. Plaintiffs' position is perplexing, as statutory tolling could only benefit plaintiffs. Nonetheless, for the sake of thoroughness, this Memorandum Opinion addresses statutory tolling.

[17] Amended in 2016, § 8.01-229(E)(3) now (1) operates to toll statutory *and* contractual limitations periods and (2) applies to actions filed in federal court. *See* 2016 Va. Acts ch. 268, Va. Code 8.01-299(E)(3) (amending Va. Code § 8.01-229(E)(3) in 2016 to state that tolling applies "regardless of whether the statute of limitations is statutory or contractual" and "irrespective of whether the action is originally filed in a federal or a state court").

9

>where a plaintiff dies at a time when no civil action is pending.

Va. Code § 8.01-229(E)(3).[18]

Thus, the 10.5-month time period for plaintiffs' first state court action (December 29, 2016 to November 17, 2017) is excludable from the Virginia Policy's 2-year limitations period if and only if plaintiffs filed the *second state court action* in accordance with one of the three circumstances in the Nonsuit Rule. Similarly, the 21-month time period for plaintiffs' second state court action (May 10, 2018 to February 7, 2020) is excludable from the Virginia Policy's 2-year limitations period if and only if plaintiffs filed the *instant federal action* in accordance with one of the three circumstances in the Nonsuit Rule.[19]

Here, plaintiffs complied with the Nonsuit Rule following the dismissal of the first state court action, but they did not comply with the Nonsuit Rule following the dismissal of the second state court action. Thus, the 10.5-month time period during which the first state court action was pending (December 29, 2016 to November 17, 2017) is excludable from the Virginia Policy's 2-year limitations period. But the 21-month time period during which the second state court action was pending (May 10, 2018 to February 7, 2020) is not excludable because the instant federal action was filed seven months after the nonsuit order, not six months after the nonsuit order. *Id.*

The untimely filing of this action on September 9, 2020 is not saved by the other two circumstances in the Nonsuit Rule. The second circumstance in the Nonsuit Rule does not apply because the phrase "original period of limitation" refers to the original limitations period without any tolling—a period which expired here 2 years after January 31, 2016, well before the filing of

---

[18] *See also Forer*, 265 Va. at 488–89 (discussing Va. Code § 8.01-229(E)(3)); *Dunston v. Huang*, 709 F. Supp. 2d 414, 417 (E.D. Va. 2010) (same).

[19] Defendant has assumed, for the sake of argument, that a plaintiff may twice benefit from the Nonsuit Rule by filing and nonsuiting two different state court actions. Defendant has not conceded the issue.

10

this action on September 9, 2020. *See Forer*, 265 Va. at 490 ("We construe the term 'original period of limitation' to mean the original statute of limitations without any tolling of that statute while a nonsuited action is pending.").[20] The third of the three circumstances in the Nonsuit Rule does not apply because no plaintiff died at a time when no action was pending. *See* Va. Code § 8.01-229(B)(1) (applicable where the plaintiff "dies with no such action pending"); Compl. ¶ 3 (explaining that Hacker died in November 2018, a time when an action *was pending*).

Thus, plaintiffs complied with the Nonsuit Rule following the nonsuit of plaintiffs' first state court action, but plaintiffs did not comply with the Nonsuit Rule following the nonsuit of plaintiffs' second state court action. As a result, the 10.5-month time period from December 29, 2016 to November 17, 2017—the pendency of the first state court action—is excludable but the 21-month time period from May 10, 2018 to February 7, 2020—the pendency of the second state court action—is not excludable. Thus, the following chart illustrates this conclusion.

| January 31, 2016 to December 29, 2016 | 10 months and 29 days. |
| --- | --- |
| December 29, 2016 to November 17, 2017 | Excluded. |
| November 17, 2017 to May 10, 2018 | Excluded.[21] |
| May 10, 2018 to February 7, 2020 | 1 year, 8 months, and 28 days. |
| February 7, 2020 to September 9, 2020 | 7 months and 2 days. |

---

[20] To be sure, the Supreme Court of Virginia in *Forer* construed the term "original period of limitation" to refer back to the general statutory limitations period, which there was the ordinary 2-year statute of limitations on tort claims in Va. Code § 8.01-243(A). But this does not mean that the ordinary 5-year statute of limitations on contract claims in Va. Code § 8.01-246 applies here. This is so because § 8.01-246 specifically states that the general 5-year limitations period does not apply, where, as here, the parties have "otherwise specified" a different limitations period by contract, here 2 years. *See* Va. Code § 8.01-246. Thus, applying *Forer*, this action is untimely.

[21] Defendant contends that this 5 month and 23-day period may be tolled here solely because Va. Code § 8.01-229(E)(3) does not make clear whether the six-month time period following the proper refiling of a nonsuited action is tolled. Here, it is irrelevant whether this time period is tolled. If this period is not tolled, then this action is untimely by 1 year, 8 months, and 22 days. If this period is tolled, then this action is untimely by 1 year, 2 months, and 29 days.

In summary, the total countable time from the date of the loss to the filing of this action is 3 years, 2 months, and 29 days. Thus, even with proper statutory tolling, this action is untimely by 1 year, 2 months, and 29 days.

Seeking to avoid the conclusion that this action must be dismissed as untimely, plaintiffs argue that the Virginia Policy's 2-year limitations period is invalid because it is unreasonably short, and therefore that Virginia's general 5-year limitations period for contract actions must apply instead. As an initial matter, plaintiffs' position is at odds with the fact that the Virginia General Assembly made a legislative judgment that the appropriate minimum limitations period in an insurance contract is 1 year. *See* Va. Code § 38.2-314 (setting minimum 1-year limitations period). Thus, by implication, the Virginia General Assembly has approved of (and the courts have upheld) insurance contracts with limitations periods longer than 1 year, such as 2 years. *See, e.g.*, *Allstate Prop. v. Ploutis*, 290 Va. 226, 232 (2015) (dismissing insurance action for untimeliness where the insured did not file the action within the contractual 2-year limitations period); *Hitt Contracting, Inc. v. Indus. Risk Insurers*, 258 Va. 40, 47 (1999) (same).[22] Indeed, because § 38.2-314 expresses the General Assembly's "intent with regard to the limitation of actions derived from insurance policies," there is no apparent basis to invalidate the Virginia Policy's 2-year limitations period, as the pertinent policy provision here complies with § 38.2-314. *Belrose v. Hartford Life & Acc. Ins. Co.*, 478 F. App'x 21, 24 (4th Cir. 2012); *Jones Lang LaSalle Americas, Inc. v. Hoffman Family, LLC*, 606 F. App'x 706, 709 (4th Cir. 2015) (internal citation omitted) ("Virginia courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality

---

[22] *See also Payne v. Blue Cross & Blue Shield of Va.*, 976 F.2d 727 (Table), 1992 WL 235537, at *2 (4th Cir. 1992) (dismissing Virginia insurance action for untimeliness where the insured did not file the action within a 1-year limitations period); *Koonan v. Blue Cross & Blue Shield of Va.*, 802 F. Supp. 1424, 1425 (E.D. Va. 1992) (same); *Belrose v. Hartford Life & Acc. Ins. Co.*, 478 F. App'x 21, 24 (4th Cir. 2012) (dismissing Virginia insurance action for untimeliness where the insurance contract had a 3-year limitations period on filing a civil action).

is clear and certain.").

First, plaintiffs argue that the Virginia Policy's 2-year limitations period must be invalidated because the policy provides too narrow a window to file a civil action. By this, plaintiffs appear to take issue with the fact that the Virginia Policy precludes plaintiffs from filing a civil action (1) before a certain time (*i.e.*, "not until 30 days after proof of loss has been filed and the amount of the loss has been determined") and (2) after a certain time (*i.e.*, "within two (2) years after a loss occurs"). This argument fails. To begin with, plaintiffs filed an initial state court action *eleven months before* submitting proof of loss, thereby disregarding the very provision plaintiffs now claim unfairly restricts, or restricted, their right to file a civil action. The Supreme Court of Virginia has explained that public policy arguments to invalidate a contract may turn on "the particular circumstances of the case," and here plaintiffs are not saved by a provision that they openly flouted.[23] Next, there is no direct or specific record evidence that defendant deliberately delayed determination of the loss in order to create a narrow window to file a civil action. Indeed, the record reflects the opposite, namely, that Brentzel played a significant role in causing any delay here.[24] Finally, it is perfectly appropriate for an insurance contract to contain (i) a prerequisite to filing suit and (ii) a time period to file suit. *See, e.g.*, *Keller v. Fed. Ins. Co.*, 765 F. App'x 271, 272 (9th Cir. 2019) (dismissing action in case involving both a proof of loss provision and a limitations provision).[25] Thus, plaintiffs' argument that the Virginia Policy provides too narrow a

---

[23] *See Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 144–45 (2013); *see also Modern Env'ts, Inc. v. Stinnett*, 263 Va. 491, 495 (2002) (challenge to contractual provision based on public policy "considered in the context of the facts of the specific case"); *Denton v. Browntown Valley Assocs., Inc.*, 294 Va. 76, 88 (2017) ("The first party to materially breach [sic] a contract cannot enforce it.").

[24] The record reflects that Brentzel was not available for a home inspection between August 2015 and August 2016, despite defendant's repeated requests for such an inspection (Dkt. 33-8), and that Brentzel did not submit her proof of loss until November 21, 2017 (Dkt. 33-13), almost two years after the Move ended. The record also indicates that Brentzel did not respond to defendant's letter following her deposition and that defendant closed her file in part for this reason (Dkts. 33-15 and 33-16).

window to file a civil action is unpersuasive and does not alter the result reached here.

Second, plaintiffs argue that the first part of Va. Code § 38.2-314 operates to invalidate the Virginia Policy's 2-year limitations period. The first part of § 38.2-314 states that:

> No provision in any insurance policy shall be valid if it limits the time within which an action may be brought to less than one year after the loss occurs or the cause of action accrues.

Va. Code § 38.2-314.

The fatal flaw in this argument is that the Virginia Policy complies with § 38.2-314. Importantly, the Supreme Court of Virginia in *Ramsey* made clear that an insurance contract may set the minimum limitations period to run from either "after the loss occurs *or* the cause of action accrues." *Ramsey v. Home Ins. Co.*, 203 Va. 502, 504 (1962) (emphasis added). Specifically, the Supreme Court of Virginia in *Ramsey* construed Section § 38.2-314's predecessor statute

> [T]o provide a limitation upon the minimum time for bringing suit on policies as to which limitations are not specifically provided, and [that] in such cases the policy may limit the time to not less than one year after the loss *or* after the cause of action accrues, *as the policy may provide*.[26]

Here, the Virginia Policy complied with § 38.2-314, providing plaintiffs with more than 1 year to sue after the date of their loss. Virginia Policy, Def. Exs. 1–2, at 14, 24, 42, 52.[27] Moreover,

---

[25] *See also Swaebe v. Fed. Ins. Co.*, 374 F. App'x 855, 857 (11th Cir. 2010) (same); *Melba Terry Shelton Succession v. Encompass Indem. Co.*, 60 F. Supp. 3d 722, 727 n.7 (W.D. La. 2014) (insurance policy containing (i) a proof of loss provision and (ii) a limitations provision complied with Louisiana's equivalent of Va. Code § 38.2-314).

[26] *Id.* (emphasis added); *see also Am. Equip. Leasing v. McGee's Crane Rental, Inc.*, No. 01-cv-4783, 2002 WL 32341794, at *8 (E.D. Pa. Dec. 11, 2002) (explaining that Va. Code § 38.1-314 "permits parties to choose either when 'the loss occurs or the cause of action accrues'" as the relevant event that begins the running of the limitations period.).

[27] It is also worth noting that, as written, § 38.2-314 does not provide to the insured a cause of action or affirmative right to sue an insurance company. Section 38.2-314 is phrased in the negative, and thus merely invalidates any "provision" in an insurance contract that itself "limits the time period an action may be brought to less than one year after the loss occurs or the cause of action accrues." Va. Code § 38.2-314. Here, there is no provision that on its face limits the time for plaintiffs to sue defendant to less than "one year after the loss occurs or the cause of action accrues." Va. Code § 38.2-314. Thus, there is no "provision" in the Virginia Policy to invalidate and plaintiffs' reliance on § 38.2-314 is misplaced for this additional reason. *Id.*

14

even assuming *arguendo* that the Virginia Policy had used the cause of action accrual date as the starting point for the timeliness analysis (it did not), that does not mean that plaintiffs' breach of contract claim did not accrue until September 2019, within one year of the filing of this action on September 9, 2020. This is so because, although the pertinent breach event from which a claim for breach of an insurance contract accrues is the date of claim denial, that date may properly occur as soon as the insured views their claim as effectively denied. *See Migliaro v. Fidelity Nat. Indemnity Insur. Co.*, 880 F.3d 660, 667 (3d Cir. 2018) (plaintiff who sued insurance company following correspondence about proof of loss "necessarily admit[ed] that he viewed [this proof of loss correspondence] . . . as a written denial of his claim"). Here, plaintiffs clearly considered their insurance claim denied well before September 2019 because:

> (1) Brentzel and Hacker sued defendant in December 2016 and again in May 2018, thereby conceding that they necessarily viewed the insurance claim denied prior to September 2019; and
>
> (2) Defendant's letters to Brentzel, particularly the February 21, 2017 letter (Pls. Ex. 11 (Dkt. 33-11)), made unmistakably clear well before September 2019 that defendant sharply disputed the insurance claim.

Thus, assuming *arguendo* that the cause of action accrual date is relevant here, the accrual date was well before September 2019 and thus more than 1 year before the filing of this action on September 9, 2020, thereby satisfying § 38.2-314. Accordingly, § 38.2-314 does not save this action from untimeliness.

Plaintiffs next argue that the second part of § 38.2-314 saves this action from untimeliness, as this provision excludes all time "consumed in an effort to adjust the claim," and thus according to plaintiffs, all time between January 31, 2016 and September 2019. Va. Code § 38.2-314. This argument misreads the statute. Section 38.2-314 excludes the time to adjust a claim only from any deadline to file "proof of loss" with the insurance company, and thus not the deadline to file a civil

15

action. Va. Code § 38.2-314. As previously explained in *Swiacki v. State Farm Fire & Casualty Co.*, No. 1:09-cv-647, 2009 WL 10688150 (E.D. Va. July 10, 2009), the second part of § 38.2-314 "clearly applies to the proof of loss deadline and *not* the limitations period in which a claim must be filed." *Id.* at *2 (emphasis in original) (citing *N. British Mercantile Ins. Co. v. Edmundson*, 104 Va. 486, 490–91 (1905)).[28] Here, the deadline to file proof of loss is irrelevant, and thus the second part of § 38.2-314 is irrelevant. Accordingly, nothing about § 38.2-314 alters the result reached here that this action is untimely.

Third, plaintiffs argue that defendant must be equitably estopped from asserting a time bar because defendant allegedly lulled plaintiffs into a lengthy insurance claims adjustment process,[29] thereby preventing plaintiffs from having time to file a civil action. This argument is plainly meritless. The doctrine of equitable estoppel applies "only where a defendant has misled a plaintiff, causing that plaintiff to delay filing a viable suit until after that suit becomes barred by a statute of limitations." *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1302 (4th Cir. 1993); *York v. Nationwide Gen. Insur. Co.*, No. 3:19-cv-507, 2019 WL 6493991, at *2 (E.D. Va. Dec. 3, 2019) (same). Here, as in *Caviness* and *York*, there is no factual basis for equitable estoppel. Indeed, the record establishes that there can be *no* claim for equitable estoppel. Plaintiffs, represented by counsel, filed 2 state court actions prior to the expiration of the limitations period and thus could

---

[28] *See also Am. Equip. Leasing v. McGee's Crane Rental, Inc.*, No. 01-cv-4783, 2002 WL 32341794, at *6–7 (E.D. Pa. Dec. 11, 2002) (same).

[29] Contrary to plaintiffs' argument, it was not unreasonable for defendant to require Brentzel to submit sufficient information and/or documentation regarding her alleged insurance losses. Any reasonable insurer would require sufficient information and/or documentation of alleged losses where, as here, the insurance claim changes from "one for damages [for a] small fraction of the [insured] items" to a "theft claim of more than $1.6 million." Pls. Ex. 11 at 2; *see also Lord v. State Farm Mut. Auto Ins. Co.*, 224 Va. 283, 287 (1982) (explaining that an insurer "must investigate not only the merits of the claim but also whether there is coverage at all under the policy contract"); *Angstadt v. At. Mut. Ins. Co.*, 254 Va. 286, 293 (1997) (explaining that the insurance company required the claimant to sit for a deposition); Virginia Policy, Def. Ex. 1, at 11–12 (Dkt. 22-1) (discussing plaintiffs' obligation to cooperate in an insurance investigation).

16

not have been dissuaded by defendant from filing a timely civil action. Accordingly, equitable estoppel does not apply here.[30]

Finally, plaintiffs argue that defendant, an insurer, owed plaintiffs, the insured, an unspecified duty to inform Brentzel and Hacker about the relevant statutory and contractual limitations periods. This argument is meritless. As a factual matter, the record confirms that plaintiffs' former counsel was contemporaneously aware of the pertinent deadline to refile an action and did not need to be reminded of this fact by defendant. *See* Def. Ex. 14, at 67 (Dkt. 23-2) (email containing discussion of Virginia's tolling statute in May 2018 by plaintiffs' former counsel). Moreover, plaintiffs have cited no legal authority to support a common law duty to inform a represented insured that the limitations period may expire; indeed, existing authority plainly suggests otherwise.[31] Thus, nothing about defendant's supposed duty to inform alters the result reached here that this action is untimely. In summary, none of plaintiffs' arguments alters the result reached here that this action is untimely. Accordingly, defendant's Motion for Summary Judgment must be granted with respect to Count 1.

**III.**

---

[30] Seeking to avoid this conclusion, plaintiffs cite (without pincite or meaningful discussion) the following four cases: *Am. Mut. Ins. Co. v. Hamilton*, 145 Va. 391 (1926); *United States v. Fidelity*, 402 F.2d 893 (4th Cir. 1968); *Barry v. Donnelly*, 781 F.2d 1040 (4th Cir. 1986); and *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931 (4th Cir. 1991). Each of these estoppel cases is distinguishable and thus unpersuasive. Simply put, unlike those cases, plaintiffs filed *two lawsuits prior to the expiration of the limitations period* and therefore could not possibly have been lulled or dissuaded into not filing a timely civil action. Additionally, on summary judgment plaintiffs have not identified any specific false statement by defendant upon which to assert equitable estoppel. *See* Pls. Br. at 14 n.15 (directing the Court to review 9 exhibits attached to its summary briefing and to determine the "factual details" pertinent to estoppel on its own).

[31] *See Maxey v. Doe*, 217 Va. 22, 25–26 (1976) ("[T]he insurer was under no duty to inform the insured that, should their dealings and negotiations fail to resolve the claim, it would rely on the insured's failure to file the SR-300 report as required by statute."); *see also Truman v. Spivey*, 225 Va. 274, 280 (1983) ("As soon as he made his claim under the Act against his insurance carrier, an adversary relationship arose and State Farm was under no obligation to furnish him information."); *Keller v. Fed. Ins. Co.*, 765 F. App'x 271, 273 (9th Cir. 2019) (internal citation omitted) (emphasis in original) ("[C]onduct by the insurer *after* the limitation period has run—such as failing to cite the limitation provision when it denies the claim, failing to advise the insured of the existence of the limitation provision, or failing to specifically plead the time bar as a defense—cannot, as a matter of law, amount to a waiver or estoppel.").

Defendant has also sought summary judgment on Count 2, a claim for bad faith denial of an insurance contract and now the sole remaining claim in this action. Defendant's motion must be granted, for two separate reasons. First, Count 2 is untimely for all the same reasons expressed *supra* with respect to Count 1. Second, for the reasons previously stated in the February 25, 2021 Order bifurcating the issue of breach of contract from the issue of defendant's alleged bad faith, *see* Feb. 25, 2021 Order at 2 (Dkt. 29), there is no independent cause of action in Virginia for bad faith denial of an insurance claim. *See REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 213 (2015). The issue of bad faith is a component of damages, to be decided only if the insured first establishes coverage. The statute plaintiffs rely on to assert a claim for bad faith, Va. Code § 38.2-209(A), simply "does not create an independent cause of action for an insurer's bad faith breach of an insurance contract . . . [but instead] authorizes the court to award attorney's fees and costs after the insured establishes coverage." *Id.* Plaintiffs also have not identified any Virginia common law authority to indicate that Count 2 may proceed to trial. Nor is any such authority apparent. Therefore, there is no basis for Count 2 to proceed to trial. Accordingly, defendant's Motion for Summary Judgment must be granted with respect to Count 2.

## IV.

For the reasons set forth above, defendant's Motion for Summary Judgment must be granted, and this action must be dismissed. An appropriate Order will issue separately.

The Clerk is directed to send a Copy of this Order to all counsel of record.

Alexandria, Virginia
August 5, 2021

/s/
T. S. Ellis, III
United States District Judge